IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES** | \* |
| | \* |
| v. | \*   Crim. Case No.:  SAG-04-0578 |
| | \* |
| **OLIVER CLIFTON HUDSON,** | \* |
| | \* |
| **Defendant.** | \* |
| | \* |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

On November 8, 2005, a jury convicted Oliver Clifton Hudson of twenty-six counts, including one count of Continuing Criminal Enterprise pursuant to 21 U.S.C. § 848(a), which carries a twenty-year mandatory minimum sentence. On February 22, 2006, United States District Judge J. Frederick Motz sentenced Hudson to a total sentence of 360 months of incarceration, to be followed by a period of three years of supervised release.  ECF 205.  On February 22, 2021, Hudson filed a pro se Motion for Compassionate Release.  ECF 291.  His attorney supplemented that motion, ECF 296, and full briefing ensued, to include production of updated medical information and Hudson's BOP disciplinary record.[1]  ECF 299, 304, 307.  I have also reviewed Hudson's Presentence Investigation Report, ECF 308, and his Pretrial Services Report.  No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021).  For the reasons that follow, Hudson's Motion will be denied without prejudice.

**I.     LEGAL STANDARDS**

As part of the First Step Act, enacted in December, 2018, Congress expanded 18 U.S.C. § 3582(c), permitting courts to reduce an existing term of imprisonment where "extraordinary and

---

[1] This Court denied Hudson's original motion on September 2, 2021 because he had not exhausted his administrative remedies.  He has since rectified that error, and this Court now considers his arguments on the merits.

compelling reasons warrant such a reduction." *See* 18 U.S.C. § 3582(c)(1)(A)(i) (2018); Pub. L. No. 115-391, tit. VI, § 603(b), 132 Stat. 5194, 5239-41 (2018). While previously, any motion for compassionate release had to be initiated by the Bureau of Prisons ("BOP"), the First Step Act granted defendants the ability to move the Court for a reduction in their sentence for "extraordinary and compelling reasons." § 603(b)(1). Before a defendant's motion can be filed with the Court, one of two conditions must be satisfied: (1) the defendant must have exhausted all administrative remedies to appeal the BOP's failure to bring a motion on his behalf, or (2) thirty days must have lapsed "from the receipt of such a request by the warden of the defendant's facility," whichever is earlier. *Id.* Once a motion is for compassionate release is properly filed, the Court follows a three-step inquiry: (1) determining whether "extraordinary and compelling reasons" render the inmate eligible for compassionate release; (2) considering whether the factors set forth in 18 U.S.C. § 3553(a) weigh in favor of a sentence reduction; and (3) ensuring that the reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

## II.   ANALYSIS

Hudson has now adequately exhausted his administrative remedies. Thus, this Court turns to whether he has established any "extraordinary and compelling reason[]" warranting further consideration of compassionate release.

Congress has charged the United States Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A). 28 U.S.C. § 994(t) (2018). In response, the Commission defined "extraordinary and compelling reasons" to exist where (A) the defendant is suffering from a terminal or serious medical condition; (B) the defendant is over 65 years old, has failing health, and has served at least

ten years or 75 percent of his sentence, whichever is less; (C) the caregiver of the defendant's minor child dies or becomes incapacitated, or the defendant's spouse or partner becomes incapacitated and the defendant is the only available caregiver; or (D) "other reasons" as determined by the BOP.[2]  *See* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 cmt. n.1(A)–(D) (U.S. SENTENCING COMM'N 2018) [hereinafter "U.S.S.G."].  This Court has authority to consider any "extraordinary and compelling reason" a defendant might raise, regardless of the BOP's determinations.  *See United States v. McCoy,* 981 F.3d 271, 284 (4th Cir. 2020).

Relevant to this case, the COVID-19 pandemic can, in certain circumstances, give rise to an "extraordinary and compelling reason[]" for an inmate's release under the First Step Act.  *E.g.*, *Wise*, 2020 WL 2614816, at *6-8; *Gutman*, 2020 WL 2467435, at *2.  In this Court's view, the case law demonstrates that continued exposure to COVID-19 in an incarcerative setting might convert a medical condition that might not otherwise be deemed "serious" into a "serious medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *See* U.S.S.G. § 1B1.13 cmt. n. 1(A)(ii)(I).

However, the fact that COVID-19 is present in a correctional facility is not alone sufficient to qualify an inmate for compassionate release under the First Step Act.  *See United States v. Williams*, Crim. No. PWG-13-544, 2020 WL 1434130, at *3 (D. Md. Mar. 24, 2020) (Day, M.J.) ("The existence of the present pandemic, without more, is not tantamount to a 'get out of jail free' card.").  Instead, to qualify for compassionate release, an inmate must demonstrate that he (1) has a condition that compellingly elevates his risk of becoming seriously ill, or dying, from COVID-

---

[2] This Court recognizes that Hudson is at least 65 years old and has served more than ten years of his sentence.  As described below, however, he is not "in failing health," so he does not meet the BOP's definition of an "extraordinary and compelling reason" for compassionate release.

19, and (2) is more likely to contract COVID-19 in his particular institution than if released. *See, e.g.*, *Wise*, 2020 WL 2614816, at *6-7 (discussing the danger that COVID-19 poses, and collecting cases finding that "serious chronic medical conditions and old age qualify" as compelling reasons for compassionate release); *United States v. Austin*, Case No. 15-20609, 2020 WL 2507622, at *4-5 (E.D. Mich. May 15, 2020) (finding that even if the defendant's petition was timely, release would be improper, even though he both was immunocompromised and had heart disease, because there were no COVID-19 cases at his prison), *appeal filed*, No. 20-1523 (6th Cir. June 8, 2020); *United States v. Harper*, Crim. No. 7:18-cr-00025, 2020 WL 2045381, at *3 & n.3 (W.D. Va. Apr. 28, 2020) (release justified by the defendant's age, heart condition, COPD, emphysema, and asthma, coupled with the fact that the prison he was housed at had "the fourth largest number of infections among federal prisons in the country"); *Mel*, 2020 WL 2041674, at *3; *United States v. Shah*, Case No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. Apr. 22, 2020) (denying release, in part, because there were no COVID-19 cases at the inmate's facility, and the prison was making efforts to protect inmates).

      Hudson's medical records are, at best, contradictory as to some of the assertions he makes about his medical history. For example, Hudson asserts in his motion that he smoked at least a pack a day for thirty-eight years, up until his arrest in this matter. ECF 304 at 4. His medical records, however, repeatedly reflect that he was either a non-smoker, ECF 304-1 at 2 ("never a smoker); *Id.* at 25 ("No history of smoking."), or that he smoked cigars for ten years. *Id.* at 16. The health history portions of Hudson's pretrial services report and presentence investigation reports make no reference to smoking. Also, implausibly, Hudson alleges that, "Beginning in the early 1960s, Mr. Hudson was frequently working in old, commercial buildings performing demolition and removal." ECF 304 at 5. Hudson's medical records clearly reflect his date of birth

as 1955, meaning that he could not have been employed in demolition in the early 1960s.  *See generally* ECF 304-1. Next, his motion asserts that he has a "severe case of asthma that requires medication twice daily and an albuterol inhaler for attacks." ECF 304 at 6.  In contrast, his medical records indicate that he was diagnosed with asthma as a child, has had no intubations or hospitalizations, and makes "sparing" use of an inhaler "usually only during season changes and exercise."  ECF 304-1 at 16.  Once again, his health history reports to the pretrial services and probation investigators made no reference to asthma, undermining any notion that his asthma is severe.  Finally, the record is clear that Hudson has now received vaccination against COVID-19 virus, which dramatically reduces his risk of serious complications from the infection.  On the present record, then, this Court concludes that Hudson's vaccination status removes any of the other medical conditions he may have from the category of risk constituting an "extraordinary and compelling reason."

The remaining question for the Court, then, is whether absent a medical justification, Hudson's arguments regarding the disproportionate length of his sentence amount to an "extraordinary and compelling reason" justifying further consideration of his release.  Recently, in *United States v. McCoy,* 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit addressed a somewhat similar issue, considering consolidated appeals in cases in which courts had considered as "extraordinary and compelling reasons" the length of the defendants' "stacked" sentences under 18 U.S.C. § 924(c) and the disparity between those sentences and those would be imposed after Congress, in the First Step Act, ended the practice of § 924(c) "stacking."  The district courts granted the defendants' motions and reduced their sentences, reasoning that the reductions were not inconsistent with any applicable policy statement by the Sentencing Commission because the Sentencing Commission has not issued any policy statements since the First Step Act was enacted

on December 21, 2018. *Id.* Because Congress ended the practice of § 924(c) stacking, there is no question that the defendants discussed in *McCoy* would have received dramatically lower sentences if sentenced today – by a full 30 years. The district courts considered that fact, in addition to the individualized circumstances presented by each defendant, including their "exemplary prison records and other evidence of rehabilitation," and concluded that their sentences should be reduced to time served. *Id.* at 279. The Fourth Circuit upheld those rulings. *Id.*

The argument made by Hudson is distinguishable, however. There has been no intervening act of Congress, analogous to the elimination of § 924(c) stacking, with a direct impact on his existing sentence. His current sentence of 360 months represented the low end of the advisory guideline range for his offense of conviction at the time he was sentenced, and the advisory guideline range would be the same today. Hudson is correct in noting that his thirty-year sentence exceeds the current national average sentence imposed for murder. However, his case, while not involving murder, was a particularly egregious drug trafficking case. As the commentary to U.S.S.G. 2D1.5 recognizes, "a conviction under 21 U.S.C. § 848 establishes that a defendant controlled and exercised authority over one of the most serious types of ongoing criminal activity." Hudson was the leader or organizer of a group responsible for distributing at least 41,390 pills containing oxycodone. Given his significant criminal history, which includes convictions for robbery with a deadly weapon and assault with intent to murder in addition to multiple prior convictions involving forged prescriptions, Hudson might well receive a sentence well within the advisory guideline range even today, although the average length of sentences imposed has admittedly decreased. Because it is not therefore evident that Hudson's sentence is even discrepant to that which he might receive today, the length of his sentence provides no extraordinary and compelling reason justifying compassionate release.

This Court acknowledges that Hudson's disciplinary record in prison has been near-exemplary. Though he has been incarcerated nearly seventeen years, he sustained just a single relatively minor infraction in 2015. While this Court commends Hudson on his rehabilitative efforts and encourages him to continue on his present path, the law expressly provides that "[r]ehabilitation ... alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t).

While there is no extraordinary and compelling reason present on the current record, this Court does not foreclose the possibility that circumstances could change in the future, particularly as to Hudson's health conditions. His Motion, ECF 304, will therefore be denied by separate order, without prejudice.

/s/
Stephanie A. Gallagher
United States District Judge